*Court Original*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| Christine F. Stauffer f/n/a Christine F. Skorberg, Plaintiff, | } } } } } } | Docket Number: **00 C 1242** |
| vs. | } } } } | Assigned Judge: James B. Moran |
| Westmoreland Obstetric and Gynecologic Associates, S.C., Hugh Falls, William Gardner, Scott Logan, Defendants. | } } } } } ) ) | |

DOCKETED
APR 2 4 2002

FILED
APR 1 5 2002

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

**PLAINTIFF'S NOTICE OF MOTION**

**TO:** Jeralyn H. Baran
     CHUHAK & TECSON, P.C.
     30 S. Wacker Dr., Suite 2600
     Chicago, IL, 60606

**PLEASE TAKE NOTICE** that on Tuesday, April 23, 2002, at 9:30 a.m., or as soon thereafter as Stauffer may be heard, Stauffer shall appear by telephone before the Honorable James B. Moran or any judge sitting in his stead, in Courtroom 1843 at 219 S. Dearborn, Chicago, IL, and at that time shall present, 1) "Plaintiff's Motion for Partial Summary Judgment Against Defendants," a copy of which is attached hereto and hereby served upon you.

Respectfully submitted by:
Plaintiff

John D. Stauffer, Jr.

Plaintiff's Address:
1425 E. Stuart St.
Ft. Collins, CO 80525
(H) 970.493.3722
(F) 970.407.1100

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was placed in overnight mail, via Federal Express, prepaid, on April 11, 2002, and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

John D. Stauffer, Jr.

81

*Court Original*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 2 4 2002

| | | |
|---|---|---|
| Christine F. Stauffer f/n/a | } | |
| Christine F. Skorberg, | ) | |
| John D. Stauffer, Jr., | ) | |
| | ) | |
| Plaintiffs, | ) | Docket Number: **00 C 1242** |
| | } | Assigned Judge: **James B. Moran** |
| vs. | } | |
| | } | |
| Westmoreland Obstetric and | } | |
| Gynecologic Associates, S.C., | } | |
| Hugh Falls, William Gardner, | } | |
| Scott Logan, | } | |
| | ) | |
| Defendants. | ) | |

FILED
APR 15 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS

Plaintiff John D. Stauffer, Jr. ("Stauffer"), moves for partial summary judgment against Defendants pursuant to Fed R. Civ. P. 56, as more fully detailed below, and as grounds therefor states:

### Motion Summary

There is no genuine issue as to certain material facts, as more fully detailed herein and Stauffer is entitled to a partial summary judgment against Defendants as a matter of law, specifically, as to five areas;

**A. Stock Valuation.** Stauffer is owed $258,327, plus prejudgment interest, as of April 14,1999, for Christine Stauffer's corporation stock transferred back to the Westmoreland pursuant to the controlling 1989 Stock Purchase Agreement ("1989 SPA"). Pl.Ex. 2., at page 9, 7.3.

**B. Accounts Receivables' Valuation.** Stauffer is owed $184,092, plus prejudgment interest as of February 28, 1999, per the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"), at 3.1(a) which was in effect at the time of Christine's Stauffer's departure on February 28, 1999. Pl.Ex. 5, at page 2. Additionally, Stauffer is owed $414,497, plus prejudgment interest as of February 28,1999, per the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA") "Supplemental Amount," at 3.1(b), which was in effect at the time of Christine Stauffer's departure on February 28, 1999. Pl.Ex. 5, at pg 2-4.

**C. Salary Inequality Owing Stauffer.** Stauffer is owed $386,346, plus the 1999 salary difference (data has yet to be provided); plus prejudgment interest as of the time the monies were owing Christine Stauffer; this amount was derived directly from the corporate tax returns for 1993-8. Pl.Ex.14.

**D. One Month's Salary Owing Stauffer.** Stauffer is owed one month's salary ($280,000 divided by 12 = **$23,333** upon Christine Stauffer's termination on 2/28/99 pursuant to her Employment Agreement with Westmoreland. Pl.Ex.1, par.10, pages 2-3.

**E. Corporation Procedures Completely Disregarded by Defendant Officers/Board of Directors Gardner, Falls, and Logan while acting in their official corporate capacities; Piercing the Corporate Veil; Gardner, Logan, Falls personally liable to Stauffer for their improper acts.** Gardner, Falls, and Logan knowingly and intentionally completely disregarded proper Corporate procedures and repeatedly acted improperly in their official Officer/Board of Director capacities; and should be personally

2

liable to Stauffer for their knowing and intentional wrongful acts committed while acting in their official capacities to the great financial detriment of Christine Stauffer. Gardner, Falls, and Logan, together, in both their official and individual capacities, unilaterally superceded, changed, deleted, and/or modified corporation agreement terms without the consent of all the parties to the agreements (ie: Christine Stauffer), to Christine Stauffer's tremendous financial detriment.

## ARGUMENT

**A. Stock Valuation ($258,327).** There is no genuine issue of material fact as to Stauffer's minimum corporation stock valuation, and as a matter of law, Stauffer is owed **$258,327** from Westmoreland, plus prejudgment interest, as of April 14,1999, for her stock transferred to the corporation for the following reasons:

1. The controlling document as to the Corporation stock valuation when Christine Stauffer left Westmoreland was the 1989 Stock Purchase Agreement ("1989 SPA"-Pl.Ex.2).

2. The 1989 SPA unequivocally stated that stock was always to be valued at its "Agreed Value." Pl. Ex. 2, Article VII, Section 7.3, at page 9.

3. Once the "Agreed Value" was initially established pursuant to Section 7.4 (Pl.Ex.2, Article VII, Section 7.3, at page 9) the "Agreed Value" could **never** be redetermined **without the written consent of all parties**, "upon their filing with the Secretary of the Corporation a Certificate of Agreed Value....**dated and signed by each of the parties.**" Pl.Ex. 2 Article VII, 7.3, at page 9. emphasis added.

4. Contrary to Defendants' ad nausaum misstatement on this issue, there is absolutely no "buy-out" formula calculation to be computed each time the stock is purchased and/or sold contained anywhere within the 1989 SPA (absent the **written consent of all the parties**). Pl.Ex. 2 Article VII, 7.3, at page 9. emphasis added. (It is obvious that the Defendants' repeated misstatement "buy-out" formula calculation to be computed each time the stock is purchased and/or sold was actually to be found in the unsigned, unagreed to 1997 Stock Redemption Agreement (Pl.Ex.7, pg. 8, 7.3); which even the Defendants now admit was not a controlling, nor utilized document; nor applicable to any stock redemption by the corporation. (See Westmoreland "admission" by way of their attorney Baran at 3/19/02 Christine Stauffer deposition when Baran unequivocally stated that Stauffer's Stock was redeemed pursuant to the 1989 Stock Purchase Agreement- deposition transcript not yet made available to the parties).

5. "The Certificate of Agreed Value last filed with the Secretary of the Corporation.....shall be conclusive as to the purchase price and shall be accepted by and binding upon all parties hereto." Pl.Ex. 2 Article VII, 7.3, at pages 9, 10.

6. It is uncontroverted that the stock's "Agreed Value" at the time of Christine Stauffer's stock purchase was $258,327 (as determined by Westmoreland's agent accountant Leaf) which Stauffer did, in fact, pay for the stock. Pl.Ex.12.

**7. It is uncontroverted that Christine Stauffer never, subsequent to her stock purchase from Westmoreland in the amount of $258,327, agreed to, nor signed, any redetermination of the stock's "Agreed Value" (ie: a new dated and signed "Certificate of Agreed Value") as required by SPA (Pl.Ex. 2, Article VII, 7.3, at**

**page 9).** emphasis added.

8. It is uncontroverted that Christine Stauffer's stock was actually transferred to and by the Corporation on April 14, 1999. Pl.Ex. 16.

9. Thus, Stauffer is owed $258,327 as of April 14, 1999, plus prejudgment interest.

10. It is Stauffer, not Defendants, who is actually relying on the controlling 1989 Stock Purchase Agreement terms.

11. It is critical to note that the only reason former shareholders' Struwe's and Hartman's stock buy-out by the Corporation was pursuant to a book value calculation, at all, was because both agreed to such a new arrangement by way of signing new written agreements (Pl.Ex. 18 and 19) which specifically superceded the prior 1989 SPA (Pl.Ex.2) and all other prior agreements they had entered into with Westmoreland.

**B. Accounts Receivables' Valuation.** There is no genuine issue of material fact as to Stauffer's unfunded deferred compensation "Account" amount owing her pursuant to the controlling 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"-Pl.Ex.5) in effect as of February 28, 1999. As a matter of law, Stauffer is owed **$580,038**, plus prejudgment interest, as of February 28,1999, for her deferred compensation "Account" amount for the following reasons:

12. In effect at the time Christine Stauffer became an employee/shareholder of the corporation was the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"). Pl.Ex. 5.

13.  This agreement was entered into between Westmoreland and each of their physician- employees. Pl.Ex.5, page 1 ("and _____ M.D.(the "Employee")" and page 4 ("years as corporate physician- employee.")

14.  Note the distinction between "physician-employee" and "shareholder-employee."

15.  The 1989 UDCA applied specifically to and made reference to ("and _____ M.D.(the "Employee")") and page 4 ("years as corporate physician-employee."); Pl.Ex.5, page 1 ("and _____ M.D. (the "Employee"); and page 4 (ie:years as "corporate physician-employee").

16.  Thus, the 1989 UDCA (Pl.Ex.5) applied to Stauffer (and any other physician employee) as soon as she became a physician-employee with Westmoreland, not later when she exercised her option to purchase stock in the corporation and became a shareholder. Pl.Ex.1, page 5, par.13.

17.  Therefore, the 1989 UDCA applied to and became a binding contract between Stauffer and Westmoreland as of the time Stauffer became a physician-employee (ie: March 3, 1990) not when she became a shareholder-employee (ie: 8/1/93 or 5/1/96 depending on what intrepretation one believes).

18.  Pursuant to the 1989 UDCA, it could only be, "... amended in whole or in part upon the **written consent** of the **parties hereto** and their respective successors in interest, if any." Pl.Ex. 5, no. 8, at page 6.  emphasis added.

19.  At no time, did Stauffer consent, in writing or otherwise, to amend the 1989

UDCA.

20. Therefore, both 3.1 (a) "Initial Amount" and 3.1 (b) "Supplemental Amount" were part of this specific contract between Stauffer and Westmoreland as of the time she first became a physician-employee of Westmoreland.

21. It is uncontroverted Stauffer's employment termination was on February 28, 1999.

22. Pursuant to the 1989 UDCA, a shareholder's date of termination was the defining day of the "Account" valuation. Pl.Ex. 5, at pg 2, 3.1 (a) (1) and (2).

23. It is uncontroverted as of February 28, 1999, pursuant to the corporation's own accountant/agent, Leaf, the accounts receivables equaled $817,272. Pl.Ex.13, line 2.

24. Pursuant to the **1989 UDCA (Pl.Ex.5,pg 2), 3.1 (a) (1) and (2) Account - "Determination of Amount"** computations, Stauffer's "Account" should have been credited **$184,092** computed as follows (it is critical to note "gross" not "net" accounts receivables are utilized in the 1989 UDCA):

25. -3.1 (a)(1). If $161,813 of the $817,272 (Pl.Ex.13) are > 6 mo. old (Pl.Ex.6, line 2), then $655,459are < 6 mo. old. $655,459 divided by 4 shareholders = **$163,865** owing Stauffer.

26. -3.1 (a)(2). $161,813 (A/R > 6 mo.) divided by 50% = $80,907 divided by 4 shareholders = **$20,227** owing Stauffer.

27. Thus, pursuant to the 1989 UDCA, 3.1 (a) (1) and (2) Account amount

computations, $163,865 + $20,227 = **$184,092, plus prejudgment interest as of 2/28/99, is owing Stauffer. It is also uncontroverted that Stauffer, in any event, was an equal shareholder as of 5/1/96 (Pl.Ex.9); thus, Stauffer is owed this $184,092 plus prejudgment interest as of 2/28/99, even assuming, arguendo, that Stauffer was not a shareholder until 8/1/93.**

28. Pursuant to the **1989 UDCA, 3.1 (b)** **Account computation, "Supplemental Amount,"** which was in effect at the time of her departure on February 28, 1999 (Pl.Ex. 5, at page 2) Stauffer is owed **$395,946,** computed as follows:

-30% of Average Gross Fee Income (computed as a 3 year average) per the corporation tax returns: **1996=$3,278,408 + 1997=$3,452,823 + 1998=$3,167,409 = $9,898,640 divided by 3 = $3,299,547 multiplied by 30%= $989,864**

$989,864 x 40% (for 9 yrs as employee-Pl.Ex.5, pg 4)= **$395,946 owing Stauffer.**

29. Gardner, Falls, Logan, Hartman, improperly switched the 1989 UDCA (Pl.Ex.5) agreement term from "employee-physician" to "shareholder-employee" (without Stauffer's written consent, or even knowledge of) in their "Action by Unanimous Written Consent of the Board of Directors of Westmoreland...." (Pl.Ex. 22) and their "Amendment" (Pl.Ex.23) with each of the signing Board of Directors (they completely excluded Stauffer from all participation in this regards).

30. Gardner, Falls, Logan, Hartman either as Board of Directors (or as parties to the agreement) had absolutely no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement. This is but another

example of wrongdoing and improper conduct in their official capacities.

31.    Further, as of 8/1/93, Stauffer, in fact, unequivocally became an equal shareholder of Westmoreland the very day (8/1/93-Pl.Ex.12) she exercised her option to purchase her stock shares pursuant to the terms of her Employment Agreement (Pl.Ex.1, pg 5, par. 13), which stated, "13. Benefits accruing to Employee **Upon Becoming a Shareholder**.    After Employee **has exercised his option** to purchase the interest described in Paragraph 12 above, the Employee's salary shall be equal to that of the **other equal shareholders**." emphasis added.  (Westmoreland admitted that Stauffer received an "equal" salary under the terms of the Employment Agreement as of 8/1/93 by way of attorney Baran at 3/19/02 Christine Stauffer deposition-deposition transcript not yet made available to the parties).

**32.   Thus, the actual language and debate of whether the 1989 Unfunded Deferred Compensation Agreement (1989 UDCA) applied to "physician-employees" or only to "shareholder-employees" is moot because Stauffer was also a shareholder-employee as of 8/1/93 pursuant to the Employment Agreement terms agreed to by all the parties on 3/3/90.** Pl.Ex.1,pg5,par.13.

**33.   Therefore, Stauffer, in any event, was also a party to the 1989 UDCA as a shareholder-employee as of 8/1/93 (the day she exercised her option to purchase her stock shares).**

34.    Consequently, the Amendment to the 1989 UDCA (Pl.Ex. 25 and 24) executed on **11/4/93** without the written consent of **all** the parties (ie: Stauffer) to the 1989 UDCA was improper, void, and without effect, at least as it related to her. (Pl.Ex.5,

par.8).

35. Confusion artificially arises because the Defendants improperly had Stauffer sign a 1996 document called "Amendment to Stock Purchase Agreement" (Pl.Ex.9) wherein Defendants purportedly transferred Stauffer's stock to her on 5/1/96, and then only if she agreed to become bound by the terms of the 1989 Stock Purchase Agreement (1989 SPA-Pl.Ex.2).

36. Pursuant to the terms of her Employment Agreement (Pl.Ex. 1, pg 4-5, Par 12 and 13), Stauffer **already was an equal shareholder and "bound" by the terms of the 1989 SPA as of 8/1/93 (the day she undisputably exercised her option to purchase her shares-Pl.Ex.12).**

37. Further, by defination, because she was an "equal" shareholder as of the day she exercised her option to purchase her stock shares (ie: 8/1/93) she already owned the shares as 8/1/93. (That is precisely why Stauffer was correct in stating that the Defendants had said to her she owned the shares as of 8/1/93 and that she was paying back a loan to the Corporation for said shares).

38. Thus, the Defendants could not transfer stock shares to Stauffer on 5/1/96 that she already owned as of 8/1/93!

39. Nor could Defendants properly state in the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) that Stauffer would become a part of the 1989 SPA as of 5/1/96 only if she signed the Amendment **because she was already a party to the 1989 SPA as of 8/1/93!**

40. Clearly, for the above stated reasons, the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) is but one more classic example of Defendants' intentional improper corporation protocal/procedure.

**C. Salary Inequality Owing Stauffer**. There is no genuine issue of material fact as to Stauffer's salary inequality in relation to the other shareholders; and, as a matter of law, Stauffer is owed **$386,346** from Westmoreland, for the years 1993,4,5,6,7,8, plus the 1999 salary inequality (salary figures have not been disclosed to Stauffer for 1999), plus prejudgment interest as of the time said said monies were each actually owing Stauffer, for the following reasons:

41. The **$386,346** salary inequality difference amount was derived directly from the corporation's very own submitted tax returns for 1993-8, prepared by Westmoreland accountant, Leaf. Pl.Ex.14.

42. It is uncontroverted that the controlling document on this issue is the 1990 Employment Agreement (Pl.Ex.1, par.13, at page 5).

43. It is uncontroverted that Stauffer exercised her option on August 1, 1993, even according to the Westmoreland's agent, accountant Leaf. Pl.Ex. 12 ("Agreed Value" figure of $258,327).

44. Thus, as of August 1, 1993, through February 28, 1999, Stauffer's salary should have been equal to the other 3 shareholders pursuant to the controlling document on the issue, the 1990 Employment Agreement entered into between Westmoreland and Stauffer. Pl.Ex. 1, at page 5, par. 13, lines 1-3.

45. It is uncontroverted pursuant to the corporation's very own federal tax returns (Pl.Ex.14) for the years 1993, 4,5,6,7, and 8, Stauffer's salary inequality was **$386,346**. (an admission by Defendants pursuant to FRE 801 (d)). Pl.Ex. 14 is a compilation of corporation's partial tax returns with shareholders' salaries' section E. only.

46. The **$386,346** salary disparity was computed as follows:

1993 -$372,875 divided by 12=$31,073 per month given to shareholder Gardner. Stauffer became a shareholder on or about August 1, 1993; thus, she was a shareholder for 5 months during this year. Stauffer received $25,000 per month; therefore, the compensation inequality for 1993 was **$30,365**.

1993-                      **$30,365**

1994 -     $289,545 - $263,600 = $ 25,945

1995 -     $341,700 - $180,745 = $160,955

1996 -     $319,829 - $257,846 = $ 61,983

1997 -     $302,359 - $270,346 =  $32,013

1998 -     $285,085 - $280,000 =   $5,085

**TOTAL FOR 1993-8     $386,346   Salary Inequality**

1999-      plus(?) - no information regarding this year has yet been provided Stauffer.

47. Thus, Stauffer is owed **$386,346,** plus the 1999 salary inequality, plus prejudgment as of time the monies were owing Stauffer.

**D. One Month's Salary Owing Stauffer.**   There is no genuine issue of material fact that Stauffer was terminated by Westmoreland on February 28, 1999, and as a matter of law, Stauffer is owed approximately **$23,333** ($280,000 divided 12= $23,333) from Westmoreland, plus prejudgment interest, for the stock transferred to the corporation for the following reasons:

48.  Pursuant to Stauffer's Employment Agreement (Pl.Ex.1) at par. 10, pages 2-3, the Employment Agreement could be terminated by either the Employer or Employee upon giving 2 weeks written notice to the other party.

49.  It is uncontroverted that Stauffer originally gave her 2 week written notice to terminate her employment with Westmoreland on November 11,1998. Pl.Ex.17.

50.  It is uncontroverted that Stauffer did not stop working 2 weeks after she gave notice that she was resigning by way of her letter of resignation. Pl.Ex.17.

51.  It is uncontroverted that Stauffer continued to work until being given a letter from Westmoreland stating they were "accepting" her resignation as of 2/28/02 (Pl.Ex.3), even though her resignation letter had been withdrawn, Stauffer had never stopped working, and had continued well past the two week date of her 11/12/98 resignation letter.

52.   It is uncontroverted that Stauffer worked until 2/28/02, the date Westmoreland had stated in their 2/1/99 letter to Stauffer. Pl.Ex.3

53.  It is uncontroverted that in the Employment Agreement if the Employer gave the Employee notice she is being terminated, the Employee shall be entitled to one

month's additional salary upon termination. (handwritten in by Westmoreland agent). Pl.Ex.1,pg 4,par.10.

54. The "Letter of Resignation" that the Defendants requested that Stauffer sign (Pl.Ex.3, at last page) unequivocally demonstrates that Stauffer had not resigned because of the Defendants' use of the present tense (rather than the past tense), "I, Christine Skorberg, M.D., hereby resign as an officer and shareholder of Westmoreland Obstetric and Gynecologic Associates, S.C. as of February 28, 1999. If Stauffer had already resigned it would have obviously read, "I, Christine Skorberg, M.D., **resigned ......on ....**" emphasis added.

55. Stauffer submits there is no genuine issue of fact and the letter was merely a ruse to make it appear that Stauffer wanted to leave as of 2/28/99 so that Westmoreland would not have to pay her one month additional salary; especially, in light of the fact, she repeatedly told the other physicians that she wanted to stay until she sold her house, and further, she wanted to come into work on 3/1/99.

56. Stauffer submits she is entitled to the one month's additional salary (**$23,333**) based upon her termination on 2/28/99 by Westmoreland pursuant to her Employment Agreement terms, Pl.Ex.1, par.10, pages 2-3.

**E. Corporation Procedures Completely Disregarded by Defendant Officer's Gardner, Falls, and Logan while acting in their official corporate capacities; Piercing the Corporate Veil; Gardner, Logan, Falls personally liable to Stauffer for their improper acts.** There is no genuine issue of material fact that Gardner, Falls, and Logan knowingly and intentionally completely disregarded proper Corporate procedures

and repeatedly acted improperly in their official Officer/Board of Director capacities; and as a matter of law, all three Defendants should be personally liable to Stauffer for their knowing and intentional wrongful acts committed while acting in their official capacities to Christine Stauffer's tremendous financial detriment; more specifically for the following reasons:

57. Defendants Unilaterally Changed Major Corporation Agreements without the Consent of all Parties. Gardner, Falls, and Logan in their official corporate capacities (ie: Board of Directors/Officers) intentionally and knowingly violated, changed, modified, deleted, and/or replaced every major corporation agreement (ie: 1989 SPA-Pl.Ex.2 and 1989 UDCA-Pl.Ex. 5) without the written consent, nor even knowledge of, all the parties to each agreement (ie: Christine Stauffer).

**58.   Christine Stauffer was a party to each agreement and was never even informed of, nor agreed to any agreement change; further all changes were to her great financial detriment).**

59. Replaced 1989 SPA with 1997 SRA. Gardner, Falls, and Logan, while acting in their official corporate capacities (ie: Board of Directors/Officers), and without Stauffer's consent nor even knowledge, knowingly and intentionally **replaced** the controlling 1989 Stock Purchase Agreement (1989 SPA-Pl.Ex.2) and the terms contained therein with the 1997 Stock Redemption Agreement (1997 SRA-Pl.Ex.7) to the great detriment of Stauffer in the valuation of her stock when she left Westmoreland.

60. Under the terms of the 1989 SPA, Stauffer's stock was valued at $258,327 ("Agreed Value") by Westmoreland's agent and accountant Robert Leaf. Pl.Ex.12.

61. Under the terms of the 1997 SRA, Stauffer's stock was only valued at $29,753 (Pl.Ex.6,pg2), **a decrease in the stock's value by $228,574!**

62. The major differences between 1989 SPA (Pl.Ex.2) and 1997 SRA (Pl.Ex.7), which resulted in the tremendous disparity in Stauffer's stock value, were; 1) in the 1989 SPA, Accounts Receiveables (A/R) were properly included as assets, in 1997 A/R were valued at 0, and thus, completely omitted (Pl.Ex.7, pg8,7.3,lines17-19) (clearly not GAAP approved), and, 2) in 1989 SPA, Generally Accepted Accounting Procedures (GAAP) were employed (Pl.Ex.2,pg10,7.4,lines 13-14), in 1997 SRA, tax accounting principles normally used by the Corporation consistently applied were employed (Pl.Ex.7, pg8,7.3).

63. Gardner, Falls, and Logan, while acting in their official corporate capacities, knowingly and intentionally, and without Stauffer's consent (nor even knowledge), **replaced** the controlling 1989 Unfunded Deferred Compensation Agreement (1989 UDCA-Pl.Ex.5) with the 1997 Deferred Compensation Agreement (1997 DCA-Pl.Ex.8).

64. Under the terms of the 1989 DCA, Stauffer accounts receivables account's value and owing to her was $580,038 (see B., par. 24-28, above for how this total was specifically derived).

65. Under the terms of the 1997 DCA, Stauffer's accounts receivables account's value and owing her was $128,864 (Pl.Ex.6, pg1), **a decrease in the accounts receivables' value by $469,725** (ie: $580,038-$128,864=$451,174)!

66. **The huge disparity in Stauffer's deferred compensation valuation was**

due to; 1) **a completely different valuation paradigm was employed by the two documents, 2) in 1989 UDCA, gross accounts receivables were employed, in 1997 DCA, net accounts receivables were employed, and, lastly, 3) in the 1997 DCA, the improper deletion of 1989 DCA, 3.1 (b) provision resulted in a loss to Stauffer of $395,946.**

67. Gardner, Falls, Logan, Hartman, improperly switched the **1989 UDCA (Pl.Ex.5)** agreement term from "physician-physician" to "shareholder-employee" (without Stauffer's written consent, or even knowledge of) in their **"Action by Unanimous Written Consent of the Board of Directors of Westmoreland...." (Pl.Ex.25)** and their **"Amendment" (Pl.Ex.24) which ultimately resulted in a $395,946 loss to Stauffer.**

68. Gardner, Falls, Logan, Hartman as Board of Directors (nor as parties to the agreement) had absolutely no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement.

69. Further, as of 8/1/93, Stauffer, in fact, unequivocally became an equal shareholder of Westmoreland the very day (8/1/93-Pl.Ex.12) she exercised her option to purchase her stock shares pursuant to the terms of her **Employment Agreement (Pl.Ex.1, pg 5, par. 13),** which stated, "13. <u>Benefits accruing to Employee</u> **Upon** <u>Becoming a Shareholder</u>. After Employee **has exercised his option** to purchase the interest described in Paragraph 12 above, the Employee's salary shall be equal to that of the **other equal shareholders**." emphasis added. (Westmoreland admitted that Stauffer received an "equal" salary under the terms of the Employment Agreement as of 8/1/93 by

17

way of attorney Baran at 3/19/02 Christine Stauffer deposition-deposition transcript not yet made available to the parties).

70. **Thus, the actual language and debate of whether the 1989 Unfunded Deferred Compensation Agreement (1989 UDCA) applied to "employee-physicians" or only to "shareholder-employees" is moot because Stauffer was also a shareholder-employee as of 8/1/93 pursuant to the Employment Agreement terms agreed to by all the parties on 3/3/90. Pl.Ex.1,pg5,par.13.**

71. Thus, by implication, Stauffer was also a party to the 1989 UDCA as a shareholder-employee as of 8/1/93 (the day she exercised her option to purchase her stock shares).

72. Consequently, the **Amendment to the 1989 UDCA (Pl.Ex. 25, 24)** which was subsequently executed on **11/4/93** without the **written** consent of **all** the parties (ie: Stauffer) to the 1989 UDCA was improper, void, and without effect at least as to Stauffer. (Pl.Ex.5, par.8).

73. Confusion arises because the Defendants improperly had Stauffer sign a 1996 document called "Amendment to Stock Purchase Agreement" (Pl.Ex.9) wherein Defendants purportedly transferred Stauffer's stock to her on 5/1/96, and then only if she agreed to become bound by the terms of the 1989 Stock Purchase Agreement (1989 SPA).

74. Pursuant to the terms of her Employment Agreement (Pl.Ex. 1, pg 4-5, Par 12 and 13), Stauffer already was an equal shareholder and "bound" by the terms of the 1989

SPA as of 8/1/93.

75. Further, by defination, because she was an "equal" shareholder as of the day she exercised her option to purchase her stock shares (ie: 8/1/93) she already owned the shares as 8/1/93. (That is precisely why Stauffer was correct in stating that the Defendants had originally told her she owned her stock shares as of 8/1/93 and that she was then to pay back a loan made by the Corporation to her for said shares).

76. **Thus, the Defendants could not transfer stock shares to Stauffer on 5/1/96 that she already owned as of 8/1/93!**

77. Nor could Defendants properly state in the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) that Stauffer would become a part of the 1989 SPA as of 5/1/96 only if she signed the Amendment **because she was already a party to the 1989 SPA as of 8/1/93!**

78. Clearly, for the above stated reasons, the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) is but one more classic example of Defendants' intentional improper corporation protocal/procedure to benefit themselves at Stauffer's expense.

79. Gardner, Falls, Logan, Hartman as Board of Directors (and as parties to the agreement) had absolutely no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement. All of the above are egregious examples of wrongdoing and improper conduct in Gardner's, Falls', and Logan's official capacities as Officers/Board of Directors.

### PRAYER REQUEST

WHEREFORE, for the foregoing reasons, Stauffer respectfully requests the Court enter partial summary judgment in favor of Stauffer and against all Defendants in a final amount to be determined after all the requested but not yet supplied information is provided to Stauffer.

Respectfully submitted by:

Plaintiff

_____
John D. Stauffer, Jr.

Plaintiff's Address:

John D. Stauffer Jr.

1425 E. Stuart St.

Ft. Collins, CO 80525

(H) 970.493.3722

(F) 970.407.1100

**Declaration:** I hereby declare under the penalty of perjury under the laws of the United States that upon personal knowledge the foregoing is true and correct.

_____
John D. Stauffer, Jr.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was placed in overnight mail, via Federal Express, prepaid, on April 11, 2002, and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

_____
John D. Stauffer, Jr.