UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
JUL 2 2 2002

| | |
|---|---|
| Christine F. Stauffer f/n/a | } |
| Christine F. Skorberg, | ) |
| John D. Stauffer, Jr., | ) |
| | ) |
| Plaintiffs, | ) |
| | } |
| vs. | } |
| | } |
| Westmoreland Obstetric and | } |
| Gynecologic Associates, S.C., | } |
| Hugh Falls, William Gardner, | } |
| Scott Logan, | } |
| | } |
| Defendants. | } |

Docket Number: **00 C 1242**
Assigned Judge: **James B. Moran**

*FILED*
JUL 1 9 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS

Plaintiff John D. Stauffer, Jr. ("Stauffer"), moves for partial summary judgment against Defendants pursuant to Fed R. Civ. P. 56, as more fully detailed below, and as grounds therefor states:

### Motion Summary*

There is no genuine issue as to certain material facts, as more fully detailed herein and Stauffer is entitled to a partial summary judgment against Defendants as a matter of law, specifically, as to five areas;

**A. Stock Valuation.** Stauffer is owed $258,327, plus prejudgment interest, as of April 14,1999, for Christine Stauffer's corporation stock transferred back to the Westmoreland pursuant to the controlling 1989 Stock Purchase Agreement ("1989 SPA"). Pl.Ex. 2., at

---

*Stauffer incorporates herein by reference his previously submitted Exhibits 1.-23. which were provided to the Court and opposing parties with his earlier Motion for Summary Judgment so that said lengthy Exhibits do not have to be again reproduced.



**B. Accounts Receivables' Valuation.** Stauffer is owed $184,092, plus prejudgment interest as of February 28, 1999, per the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"), at 3.1(a) which was in effect at the time of Christine's Stauffer's departure on February 28, 1999. Pl.Ex. 5, at page 2. Additionally, Stauffer is owed $414,497, plus prejudgment interest as of February 28, 1999, per the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA") "Supplemental Amount," at 3.1(b), which was in effect at the time of Christine Stauffer's departure on February 28, 1999. Pl.Ex. 5, at pg 2-4.

**C. Salary Inequality Owing Stauffer.** Stauffer is owed $386,346, plus the 1999 salary difference (data has yet to be provided); plus prejudgment interest as of the time the monies were owing Christine Stauffer; this amount was derived directly from the corporate tax returns for 1993-8. Pl.Ex.14.

**D. One Month's Salary Owing Stauffer.** Stauffer is owed one month's salary ($280,000 divided by 12 = **$23,333** upon Christine Stauffer's termination on 2/28/99 pursuant to her Employment Agreement with Westmoreland. Pl.Ex.1, par.10, pages 2-3.

**E. Corporation Procedures Completely Disregarded by Defendant Officers/Board of Directors Gardner, Falls, and Logan while acting in their official corporate capacities; Piercing the Corporate Veil; Gardner, Logan, Falls personally liable to Stauffer for their improper acts.** Gardner, Falls, and Logan knowingly and intentionally completely disregarded proper Corporate procedures and repeatedly acted improperly in their official Officer/Board of Director capacities; and should be personally

liable to Stauffer for their knowing and intentional wrongful acts committed while acting in their official capacities to the great financial detriment of Christine Stauffer. Gardner, Falls, and Logan, together, in both their official and individual capacities, unilaterally superceded, changed, deleted, and/or modified corporation agreement terms without the consent of all the parties to the agreements (ie: Christine Stauffer), to Christine Stauffer's tremendous financial detriment.

## ARGUMENT

**A. Stock Valuation ($258,327).** There is no genuine issue of material fact as to Stauffer's minimum corporation stock valuation, and as a matter of law, Stauffer is owed $258,327 from Westmoreland, plus prejudgment interest, as of April 14,1999, for her stock transferred to the corporation for the following reasons:

1. The controlling document as to the Corporation stock valuation when Christine Stauffer left Westmoreland was the 1989 Stock Purchase Agreement ("1989 SPA"-Pl.Ex.2).

2. The 1989 SPA unequivocally stated that stock was always to be valued at its "Agreed Value." Pl. Ex. 2, Article VII, Section 7.3, at page 9.

3. Once the "Agreed Value" was initially established pursuant to Section 7.4 (Pl.Ex.2, Article VII, Section 7.3, at page 9) the "Agreed Value" could never be redetermined without the written consent of all parties, "upon their filing with the Secretary of the Corporation a Certificate of Agreed Value....dated and signed by each of the parties." Pl.Ex. 2 Article VII, 7.3, at page 9.

4. There is no "buy-out" formula calculation to be computed each time the stock is purchased and/or sold contained anywhere within the 1989 SPA (absent the written consent of all the parties). Pl.Ex. 2 Article VII, 7.3, at page 9.

5. "The Certificate of Agreed Value last filed with the Secretary of the Corporation.....shall be conclusive as to the purchase price and shall be accepted by and binding upon all parties hereto." Pl.Ex. 2 Article VII, 7.3, at pages 9, 10.

6. The stock's "Agreed Value" at the time of Christine Stauffer's stock purchase was $258,327 (as determined by Westmoreland's agent accountant Leaf) which Stauffer did, in fact, pay for the stock. Pl.Ex.12.

7. Christine Stauffer never, subsequent to her stock purchase from Westmoreland in the amount of $258,327, agreed to, nor signed, any redetermination of the stock's "Agreed Value" (ie: a new dated and signed "Certificate of Agreed Value") as required by SPA (Pl.Ex. 2, Article VII, 7.3, at page 9). .

8. Christine Stauffer's stock was actually transferred to and by the Corporation on April 14, 1999. Pl.Ex. 16.

9. Thus, Stauffer is owed $258,327 as of April 14, 1999, plus prejudgment interest.

10. It is Stauffer, not Defendants, who is actually relying on the controlling 1989 Stock Purchase Agreement terms.

11. It is critical to note that the only reason former shareholders' Struwe's and

Hartman's stock buy-out by the Corporation was pursuant to a book value calculation, at all, was because both agreed to such a new arrangement by way of signing new written agreements (Pl.Ex. 18 and 19) which specifically superceded the prior 1989 SPA (Pl.Ex.2) and all other prior agreements they had entered into with Westmoreland.

**B. Accounts Receivables' Valuation.** There is no genuine issue of material fact as to Stauffer's unfunded deferred compensation "Account" amount owing her pursuant to the controlling 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"-Pl.Ex.5) in effect as of February 28, 1999. As a matter of law, Stauffer is owed $580,038, plus prejudgment interest, as of February 28,1999, for her deferred compensation "Account" amount for the following reasons:

12. In effect at the time Christine Stauffer became an employee/shareholder of the corporation was the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"). Pl.Ex. 5.

13. This agreement was entered into between Westmoreland and each of their physician- employees. Pl.Ex.5, page 1 ("and _____ M.D.(the "Employee")" and page 4 ("years as corporate physician- employee.")

14. Note the distinction between "physician-employee" and "shareholder-employee."

15. The 1989 UDCA applied specifically to and made reference to ("and _____ M.D.(the "Employee")") and page 4 ("years as corporate physician-employee."); Pl.Ex.5, page 1 ("and _____ M.D. (the "Employee"); and page 4 (ie:years as "corporate

physician-employee").

16.  Thus, the 1989 UDCA (Pl.Ex.5) applied to Stauffer as soon as she became a physician-employee with Westmoreland, not later when she exercised her option to purchase stock in the corporation and became a shareholder.  Pl.Ex.1, page 5, par.13.

17.  Therefore, the 1989 UDCA applied to and became a binding contract between Stauffer and Westmoreland as of the time Stauffer became a physician-employee (ie: March 3, 1990) not when she became a shareholder-employee.

18.  Pursuant to the 1989 UDCA, it could only be, "... amended in whole or in part upon the written consent of the parties hereto and their respective successors in interest, if any." Pl.Ex. 5, no. 8, at page 6.

19.  At no time, did Stauffer consent, in writing or otherwise, to amend the 1989 UDCA.

20.  Therefore, both 3.1 (a) "Initial Amount" and 3.1 (b) "Supplemental Amount" were part of this specific contract between Stauffer and Westmoreland as of the time she first became a physician-employee of Westmoreland.

21.  Stauffer's employment termination was on February 28, 1999.

22.  Pursuant to the 1989 UDCA, a shareholder's date of termination was the defining day of the "Account" valuation. Pl.Ex. 5, at pg 2, 3.1 (a) (1) and (2).

23.  As of February 28, 1999, pursuant to the corporation's accountant/agent, Leaf, the accounts receivables equaled $817,272.  Pl.Ex.13, line 2.

24. Pursuant to the 1989 UDCA (Pl.Ex.5,pg 2), 3.1 (a) (1) and (2) Account -
"Determination of Amount" computations, Stauffer's "Account" should have been
credited $184,092 computed as follows (it is critical to note "gross" not "net" accounts
receivables are utilized in the 1989 UDCA):

25. -3.1 (a)(1). If $161,813 of the $817,272 (Pl.Ex.13) are > 6 mo. old (Pl.Ex.6,
line 2), then $655,459are < 6 mo. old.  $655,459 divided by 4 shareholders = $163,865
owing Stauffer.

26. -3.1 (a)(2).  $161,813 (A/R > 6 mo.) divided by 50% = $80,907 divided by  4
shareholders = $20,227 owing Stauffer.

27. Thus, pursuant to the 1989 UDCA, 3.1 (a) (1) and (2) Account amount
computations, $163,865 + $20,227 = $184,092, plus prejudgment interest as of 2/28/99,
is owing Stauffer.  Stauffer, was an equal shareholder as of 5/1/96 (Pl.Ex.9); thus,
Stauffer is owed this $184,092 plus prejudgment interest as of 2/28/99, even assuming,
arguendo, that Stauffer was not a shareholder until 8/1/93.

28. Pursuant to the 1989 UDCA, 3.1 (b) Account computation, "Supplemental
Amount," which was in effect at the time of her departure on February 28, 1999 (Pl.Ex. 5,
at page 2) Stauffer is owed $395,946, computed as follows:

-30% of Average Gross Fee Income (computed as a 3 year average) per the
corporation tax returns: 1996=$3,278,408 +   1997=$3,452,823 +  1998=$3,167,409 =
$9,898,640 divided by 3 = $3,299,547 multiplied by 30%= $989,864.

$989,864 x 40% (for 9 yrs as employee-Pl.Ex.5, pg 4)=  $395,946 owing Stauffer.

29.   Gardner, Falls, Logan, Hartman, improperly switched the 1989 UDCA (Pl.Ex.5) agreement term from "employee-physician" to "shareholder-employee" (without Stauffer's written consent, or even knowledge of) in their "Action by Unanimous Written Consent of the Board of Directors of Westmoreland...." (Pl.Ex. 22) and their "Amendment" (Pl.Ex.23) with each of the signing Board of Directors (they completely excluded Stauffer from all participation in this regards).

30.   Gardner, Falls, Logan, Hartman either as Board of Directors (or as parties to the agreement) had absolutely no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement.

31.   Further, as of 8/1/93, Stauffer became an equal shareholder of Westmoreland on the day (ie: 8/1/93-Pl.Ex.12) she exercised her option to purchase her stock shares pursuant to the terms of her Employment Agreement (Pl.Ex.1, pg 5, par. 13), which stated, "13. Benefits accruing to Employee Upon Becoming a Shareholder.   After Employee has exercised his option to purchase the interest described in Paragraph 12 above, the Employee's salary shall be equal to that of the other equal shareholders."

32.   Thus, the actual language and debate of whether the 1989 Unfunded Deferred Compensation Agreement (1989 UDCA) applied to "physician-employees" or only to "shareholder-employees" is moot because Stauffer was also a shareholder-employee as of 8/1/93 pursuant to the Employment Agreement terms agreed to by all the parties on 3/3/90.  Pl.Ex.1,pg5,par.13.

33.   Therefore, Stauffer, in any event, was also a party to the 1989 UDCA as a shareholder-employee as of 8/1/93 (the day she exercised her option to purchase her

stock shares).

34. Consequently, the Amendment to the 1989 UDCA (Pl.Ex. 25 and 24) executed on 11/4/93 without the written consent of all the parties (ie: Stauffer) to the 1989 UDCA was improper, void, and without effect, at least as it related to her. (Pl.Ex.5, par.8).

35. Confusion artificially arises because the Defendants improperly had Stauffer sign a 1996 document called "Amendment to Stock Purchase Agreement" (Pl.Ex.9) wherein Defendants purportedly transferred Stauffer's stock to her on 5/1/96, and then only if she agreed to become bound by the terms of the 1989 Stock Purchase Agreement (1989 SPA-Pl.Ex.2).

36. Pursuant to the terms of her Employment Agreement (Pl.Ex. 1, pg 4-5, Par 12 and 13), Stauffer already was an equal shareholder and "bound" by the terms of the 1989 SPA as of 8/1/93 (the day she exercised her option to purchase her shares-Pl.Ex.12).

37. Further, by defination, because she was an "equal" shareholder as of the day she exercised her option to purchase her stock shares (ie: 8/1/93) she already owned the shares as 8/1/93. (That is precisely why Stauffer was correct in stating that the Defendants had said to her she owned the shares as of 8/1/93 and that she was paying back a loan to the Corporation for said shares).

38. Thus, the Defendants could not transfer stock shares to Stauffer on 5/1/96 that she already owned as of 8/1/93!

39. Nor could Defendants properly state in the 1996 Amendment to Stock

Purchase Agreement (Pl.Ex.9) that Stauffer would become a part of the 1989 SPA as of 5/1/96 only if she signed the Amendment because she was already a party to the 1989 SPA as of 8/1/93.

40. For the above stated reasons, the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) is but one more classic example of Defendants' intentional improper corporation protocal/procedure.

C. <u>Salary Inequality Owing Stauffer</u>. There is no genuine issue of material fact as to Stauffer's salary inequality in relation to the other shareholders; and, as a matter of law, Stauffer is owed $386,346 from Westmoreland, for the years 1993,4,5,6,7,8, plus the 1999 salary inequality (salary figures have not been disclosed to Stauffer for 1999), plus prejudgment interest as of the time said said monies were each actually owing Stauffer, for the following reasons:

41. The $386,346 salary inequality difference amount was derived directly from the corporation's very own submitted tax returns for 1993-8, prepared by Westmoreland accountant, Leaf. Pl.Ex.14.

42. The controlling document on this issue is the 1990 Employment Agreement (Pl.Ex.1, par.13, at page 5).

43. Stauffer exercised her option on August 1, 1993, according to the Westmoreland's agent, accountant Leaf. Pl.Ex. 12 ("Agreed Value" figure of $258,327).

44. Thus, as of August 1, 1993, through February 28, 1999, Stauffer's salary should have been equal to the other 3 shareholders pursuant to the controlling document

on the issue, the 1990 Employment Agreement entered into between Westmoreland and Stauffer. Pl.Ex. 1, at page 5, par. 13, lines 1-3.

45. Pursuant to the corporation's federal tax returns (Pl.Ex.14) for the years 1993, 4,5,6,7, and 8, Stauffer's salary inequality was $386,34646.

The $386,346 salary disparity was computed as follows:

1993 -$372,875 divided by 12=$31,073 per month given to shareholder Gardner. Stauffer became a shareholder on or about August 1, 1993; thus, she was a shareholder for 5 months during this year. Stauffer received $25,000 per month; therefore, the compensation inequality for 1993 was $30,365.

1993-                         $30,365

1994 -    $289,545 - $263,600 = $  25,945

1995 -    $341,700 - $180,745 = $160,955

1996 -    $319,829 - $257,846 = $  61,983

1997 -    $302,359 - $270,346 =  $32,013

1998 -    $285,085 - $280,000 =   $5,085

TOTAL FOR 1993-8    $386,346   Salary Inequality

1999-    plus(?) - no information regarding this year has yet been provided Stauffer.

47. Thus, Stauffer is owed $386,346, plus the 1999 salary inequality, plus

prejudgment as of time the monies were owing Stauffer.

D. <u>One Month's Salary Owing Stauffer.</u>   There is no genuine issue of material fact that Stauffer was terminated by Westmoreland on February 28, 1999, and as a matter of law, Stauffer is owed approximately $23,333 ($280,000 divided 12= $23,333) from Westmoreland, plus prejudgment interest, for the stock transferred to the corporation for the following reasons:

48. Pursuant to Stauffer's Employment Agreement (Pl.Ex.1) at par. 10, pages 2-3, the Employment Agreement could be terminated by either the Employer or Employee upon giving 2 weeks written notice to the other party.

49. Stauffer originally gave her 2 week written notice to terminate her employment with Westmoreland on November 11,1998. Pl.Ex.17.

50. Stauffer did not stop working 2 weeks after she gave notice that she was resigning by way of her letter of resignation. Pl.Ex.17.

51. Stauffer continued to work until being given a letter from Westmoreland stating they were "accepting" her resignation as of 2/28/02 (Pl.Ex.3), even though her resignation letter had been withdrawn, Stauffer had never stopped working, and had continued well past the two week date of her 11/12/98 resignation letter.

52. Stauffer worked until 2/28/02, the date Westmoreland had stated in their 2/1/99 letter to Stauffer. Pl.Ex.3

53. In Stauffer's Employment Agreement if the Employer gave the Employee

notice she is being terminated, the Employee shall be entitled to one month's additional salary upon termination. (handwritten in by Westmoreland agent). Pl.Ex.1,pg 4,par.10.

54. The "Letter of Resignation" that the Defendants requested that Stauffer sign (Pl.Ex.3, at last page) demonstrates that Stauffer had not resigned because of the Defendants' use of the present tense (rather than the past tense), "I, Christine Skorberg, M.D., hereby resign as an officer and shareholder of Westmoreland Obstetric and Gynecologic Associates, S.C. as of February 28, 1999. If Stauffer had already resigned it would have obviously read, "I, Christine Skorberg, M.D., resigned ......on ...."

55. Stauffer submits there is no genuine issue of fact and the letter was merely a ruse to make it appear that Stauffer wanted to leave as of 2/28/99 so that Westmoreland would not have to pay her one month additional salary; especially, in light of the fact, she repeatedly told the other physicians that she wanted to stay until she sold her house, and further, she wanted to come into work on 3/1/99.

56. As a matter of law, Stauffer submits she is entitled to the one month's additional salary ($23,333) based upon her termination on 2/28/99 by Westmoreland pursuant to her Employment Agreement terms, Pl.Ex.1, par.10, pages 2-3.

E. Corporation Procedures Completely Disregarded by Defendant Officer's Gardner, Falls, and Logan while acting in their official corporate capacities; Piercing the Corporate Veil; Gardner, Logan, Falls personally liable to Stauffer for their improper acts. There is no genuine issue of material fact that Gardner, Falls, and Logan knowingly and intentionally completely disregarded proper Corporate procedures and repeatedly acted improperly in their official Officer/Board of Director capacities; and as a matter of law,

all three Defendants should be personally liable to Stauffer for their knowing and intentional wrongful acts committed while acting in their official capacities to Christine Stauffer's tremendous financial detriment; more specifically for the following reasons:

57. <u>Defendants Unilaterally Changed Major Corporation Agreements without the Consent of all Parties</u>. Gardner, Falls, and Logan in their official corporate capacities (ie: Board of Directors/Officers) intentionally and knowingly violated, changed, modified, deleted, and/or replaced every major corporation agreement (ie: 1989 SPA-Pl.Ex.2 and 1989 UDCA-Pl.Ex. 5) without the written consent, nor even knowledge of, all the parties to each agreement (ie: Christine Stauffer).

58. Although Christine Stauffer was a party to each agreement, she was never informed of, nor agreed to, any agreement change; further, all changes were to her great financial detriment.

59. <u>Replaced 1989 SPA with 1997 SRA</u>. Gardner, Falls, and Logan, while acting in their official corporate capacities (ie: Board of Directors/Officers), and without Stauffer's consent nor even knowledge, knowingly and intentionally replaced the controlling 1989 Stock Purchase Agreement (1989 SPA-Pl.Ex.2) and the terms contained therein with the 1997 Stock Redemption Agreement (1997 SRA-Pl.Ex.7) to the great detriment of Stauffer in the valuation of her stock when she left Westmoreland.

60. Under the terms of the 1989 SPA, Stauffer's stock was valued at $258,327 ("Agreed Value") by Westmoreland's agent and accountant Robert Leaf. Pl.Ex.12.

61. Under the terms of the 1997 SRA, Stauffer's stock was only valued at

$29,753 (Pl.Ex.6,pg2), a decrease in the stock's value by $228,574.

62. The major differences between 1989 SPA (Pl.Ex.2) and 1997 SRA (Pl.Ex.7), which resulted in the tremendous disparity in Stauffer's stock value, were; 1) in the 1989 SPA, Accounts Receiveables (A/R) were properly included as assets, in 1997 A/R were valued at 0, and thus, completely omitted (Pl.Ex.7, pg8,7.3,lines17-19) (clearly not GAAP approved), and, 2) in 1989 SPA, Generally Accepted Accounting Procedures (GAAP) were employed (Pl.Ex.2,pg10,7.4,lines 13-14), in 1997 SRA, tax accounting principles normally used by the Corporation consistently applied were employed (Pl.Ex.7, pg8,7.3).

63. Gardner, Falls, and Logan, while acting in their official corporate capacities, knowingly and intentionally, and without Stauffer's consent (nor even knowledge), replaced the controlling 1989 Unfunded Deferred Compensation Agreement (1989 UDCA-Pl.Ex.5) with the 1997 Deferred Compensation Agreement (1997 DCA-Pl.Ex.8).

64. Under the terms of the 1989 DCA, Stauffer accounts receivables account's value and owing to her was $580,038 (see B., par. 24-28, above for how this total was specifically derived).

65. Under the terms of the 1997 DCA, Stauffer's accounts receivables account's value and owing her was $128,864 (Pl.Ex.6, pg1), a decrease in the accounts receivables' value by $469,725 (ie: $580,038-$128,864=$451,174).

66. The huge disparity in Stauffer's deferred compensation valuation was due to; 1) a completely different valuation paradigm was employed by the two documents, 2) in

1989 UDCA, gross accounts receivables were employed, in 1997 DCA, net accounts receivables were employed, and, lastly, 3) in the 1997 DCA, the improper deletion of 1989 DCA, 3.1 (b) provision resulted in a loss to Stauffer of $395,946.

67. Gardner, Falls, Logan, Hartman, improperly switched the 1989 UDCA (Pl.Ex.5) agreement term from "physician-physician" to "shareholder-employee" (without Stauffer's written consent, or even knowledge of) in their "Action by Unanimous Written Consent of the Board of Directors of Westmoreland...." (Pl.Ex.25) and their "Amendment" (Pl.Ex.24) which ultimately resulted in a $395,946 loss to Stauffer.

68. Gardner, Falls, Logan, Hartman as Board of Directors (nor as parties to the agreement) had no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement.

69. Further, as of 8/1/93, Stauffer became an equal shareholder of Westmoreland the very day (8/1/93-Pl.Ex.12) she exercised her option to purchase her stock shares pursuant to the terms of her Employment Agreement (Pl.Ex.1, pg 5, par. 13), which stated, "13. Benefits accruing to Employee Upon Becoming a Shareholder. After Employee has exercised his option to purchase the interest described in Paragraph 12 above, the Employee's salary shall be equal to that of the other equal shareholders."

70. Thus, the actual language and debate of whether the 1989 Unfunded Deferred Compensation Agreement (1989 UDCA) applied to "employee-physicians" or only to "shareholder-employees" is moot because Stauffer was also a shareholder-employee as of 8/1/93 pursuant to the Employment Agreement terms agreed to by all the parties on 3/3/90. Pl.Ex.1,pg5,par.13.

71. Thus, by implication, Stauffer was also a party to the 1989 UDCA as a shareholder-employee as of 8/1/93 (the day she exercised her option to purchase her stock shares).

72. Consequently, the Amendment to the 1989 UDCA (Pl.Ex. 25, 24) which was subsequently executed on 11/4/93 without the written consent of all the parties (ie: Stauffer) to the 1989 UDCA was improper, void, and without effect at least as to Stauffer. (Pl.Ex.5, par.8).

73. Confusion arises because the Defendants improperly had Stauffer sign a 1996 document called "Amendment to Stock Purchase Agreement" (Pl.Ex.9) wherein Defendants purportedly transferred Stauffer's stock to her on 5/1/96, and then only if she agreed to become bound by the terms of the 1989 Stock Purchase Agreement (1989 SPA).

74. Pursuant to the terms of her Employment Agreement (Pl.Ex. 1, pg 4-5, Par 12 and 13), Stauffer already was an equal shareholder and "bound" by the terms of the 1989 SPA as of 8/1/93.

75. Further, by defination, because she was an "equal" shareholder as of the day she exercised her option to purchase her stock shares (ie: 8/1/93) she already owned the shares as 8/1/93. That is precisely why Stauffer was correct in stating that the Defendants had originally told her she owned her stock shares as of 8/1/93 and that she was then to pay back a loan made by the Corporation to her for said shares.

76. Thus, the Defendants could not transfer stock shares to Stauffer on 5/1/96 that

she already owned as of 8/1/93.

77.  Nor could Defendants properly state in the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) that Stauffer would become a part of the 1989 SPA as of 5/1/96 only if she signed the Amendment because she was already a party to the 1989 SPA as of 8/1/93.

78.  For the above stated reasons, the 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) is but one more example of Defendants' intentional improper corporation protocal/procedure to benefit themselves at Stauffer's expense.

79.  Gardner, Falls, Logan, Hartman as Board of Directors (and as parties to the agreement) had no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement.

## PRAYER REQUEST

WHEREFORE, for the foregoing reasons, Stauffer respectfully requests the Court enter partial summary judgment in favor of Stauffer and against all Defendants in a final amount to be determined after all the requested but not yet supplied information is provided to Stauffer.

Submitted by:
Plaintiff

John D. Stauffer, Jr.

Plaintiff's Address:
John D. Stauffer Jr.
1425 E. Stuart St.
Ft. Collins, CO 80525
(H) 970.493.3722
(F) 970.407.1100

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was mailed via Federal Express, on July 18, 2002, and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

John D. Stauffer, Jr.



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christine F. Stauffer f/n/a
Christine F. Skorberg,
John D. Stauffer, Jr.,
    Plaintiffs,

vs.

Westmoreland Obstetric and
Gynecologic Associates, S.C.,
Hugh Falls, William Gardner,
Scott Logan,

    Defendants.

}
}
}
}
}
}
}
}
}
}
}
}
}
}
)
)
)

Docket Number: **00 C 1242**

Assigned Judge: **James B. Moran**



DOCKETED
JUL 2 2 2002

FILED

JUL 1 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S L.R.56.1(a) (2) SUPPORTING MEMORANDUM OF LAW TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS

Plaintiff John D. Stauffer, Jr. ("Stauffer"), submits this supporting memorandum

of law in support of his accompanying "Plaintiff Motion for Partial Summary Judgment

Against Defendants."

### 1. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether summary

judgment is appropriate, that is to say when deciding whether a genuine issue of material

fact exists, a court must review the record in the light most favorable to the non-moving

party and make all reasonable inferences in its favor. In seeking a grant of summary

judgment the moving party must identify "those portions of the 'pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any'
which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,
477 U.S. 317, 323, 106, 91 L. Ed. 2d 265, 106 S. Ct. 2548, 2253 (quoting Fed.R.Civ.P.
56(c)). This initial burden may be satisfied by presenting specific evidence on a particular
issue or by pointing out "an absence of evidence to support the non-moving party's case."
*Id.* If the movant meets this burden, the non-moving party cannot rest on the allegations
in the pleadings, but "must set forth specific facts showing that there is a genuine issue
for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary
judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.
Ed. 2d 538 (1986). **[\*24]** Instead, "[a] genuine issue exists when the evidence is such
that a reasonable jury could find for the non-movant." *Buscaglia v. United States,* 25 F.3d
530, 534 (7th Cir.1994). When reviewing the record, all reasonable inferences must be
drawn in favor of the non-movant; however, "we are not required to draw every
conceivable inference from the record--only those inferences that are reasonable." *Bank
Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991).

## 2. <u>CONTRACT LAW STANDARD</u>

First, it is necessary to look to the plain language of the provision at issue.
Reviewing Illinois law, this Court has noted that "the starting point must be the contract
itself. If the language of the contract unambiguously provides an answer to the question
at hand, the inquiry is over." *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d
74, 78 (7th Cir. 1987).

### 3. PIERCING THE CORPORATE VEIL STANDARD

Illinois courts apply a two-prong test in determining whether to pierce the corporate veil:

First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be that such an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Harris Custom Builders, Inc. v. Hoffmeyer*, 2001 U.S. Dist. LEXIS 10032; *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994).

**A. First Prong.** With respect to the first prong, in order to find sufficient unity of interest and ownership to warrant piercing the corporate veil, Illinois courts consider several factors: inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of another; failure to maintain arm's length relationships among related entities, and whether, in fact, the corporation is only a mere facade for the operation of the dominant shareholders. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 633 N.E.2d 1350, 1357, 199 Ill. Dec. 359 (Ill. App. Cr. 1994). emphasis added. Significantly, no single factor is determinative in deciding whether to disregard a corporate entity. *Id.* *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994).

**B. Second Prong.** With regard to the second prong for piercing the corporate veil (a finding that adherence to a separate corporate existence would promote a fraud or injustice), Illinois does not require an intent to defraud, although such an intent would surely play a part if established. *Van Dorn Company v. Future Chemical and Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985). emphasis added. Rather, the "promotion of an injustice" will satisfy the second element. *Id.*

Respectfully submitted by:
Plaintiff

John D. Stauffer, Jr.

Plaintiff's Address:
John D. Stauffer Jr.
1425 E. Stuart St.
Ft. Collins, CO 80525
(H) 970.493.3722
(F) 970.407.1100

**Declaration:** I hereby declare under the penalty of perjury under the laws of the United States that upon personal knowledge the foregoing is true and correct.

John D. Stauffer, Jr.

<u>CERTIFICATE OF SERVICE</u>
The undersigned certifies that the foregoing document was mailed via Federal Express, on July 18, 2002, and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

John D. Stauffer, Jr.



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christine F. Stauffer f/n/a         }    Docket Number: **00 C 1242**
Christine F. Skorberg,              )
John D. Stauffer, Jr.               )
    Plaintiffs,                     }    Assigned Judge: **James B. Moran**
                                    }
vs.                                 }
                                    }
Westmoreland Obstetric and          }
Gynecologic Associates, S.C.,       }
Hugh Falls, William Gardner,        }
Scott Logan,                        }
    Defendants.                     )

FILED
JUL 1 9 2002

DOCKETED
JUL 2 2 2002

MICHAEL W. DOBBINS
CLERK U.S. COURT

## PLAINTIFF'S L.R.56.1 (a)(3) STATEMENT OF MATERIAL FACTS

Plaintiff, John D. Stauffer, Jr. (Stauffer) submits this "Plaintiff's L.R.56.1(a)(3)

Statement of Material Facts" that he contends there is no genuine issue and that entitle

him to a judgment as a matter of law as follows:

### (A) DESCRIPTION OF THE PARTIES.

1.  Plaintiffs' John D. Stauffer, Jr.'s (Stauffer) and Christine Stauffer's address is

1425 E. Stuart St., Ft. Collins, CO, 80525, 970.493.3722, (F)970.407.1100; he is a

resident of Colorado.

2.  Defendant Westmoreland Obstetric and Gynecologic Associates, S.C.,

(Westmoreland or Corporation) was incorporated and conducts its business in Illinois,

with its principle place of business located in Lake County, IL, with a post office address

of 900 North Westmoreland, Lake Forest, IL, 60045.

3.  Defendant Hugh Falls, (Falls), is a citizen and resident of Lake County, IL,

with a post office address of 195 N. Greenbay Rd, Lake Forest, IL, 60045.  At all times

complained of hereinafter, he was a shareholder/physician/officer of the Corporation.

4. Defendant William Gardner, (Gardner) is a citizen and resident of Cook County, IL, with a post office address of 1015 Romona Rd., Wilmette, IL 60091. At all times complained of hereinafter, he was and is a shareholder/physician/officer of the Corporation.

5. Defendant Scott Logan, (Logan) is a citizen and resident of Lake County, IL, with a post office address of Lake Bluff, IL. At all times complained of hereinafter, he was and is a shareholder/physician/officer of the Corporation.

B. **JURISDICTION.** Jurisdiction is proper pursuant to 28 USCS 1332 (c) in the United States District Court for the District of Northern Illinois because there is a complete diversity of citizenship between Plaintiff who is a citizen of Colorado, and all of the Defendants, all being citizens of Illinois and the Northern Illinois District - Eastern Division; and further, the amount in controversy exceeds, exclusive of interests and costs, the sum of $75,000.

C. **VENUE** Venue is proper pursuant to 28 U.S.C.A. 1391 (a) in the United States District Court for the District of Northern Illinois, Eastern Division because all the Defendants reside within said Eastern Division and District of Northern Illinois; further all substantial events occurred within said Eastern Division and District of Northern Illinois.

## (3) STATEMENT OF MATERIAL FACTS WHICH PLAINTIFF (STAUFFER) CONTENDS THERE IS NO GENUINE ISSUE AND THAT ENTITLES STAUFFER TO A PARTIAL SUMMARY JUDGMENT AS A MATTER OF LAW.

Stauffer submits the below detailed material statement of facts which he contends there is

2

no genuine issue and that entitle him to a judgment as a matter of law, more specifically:

1. The controlling document as to the Corporation stock valuation when Christine Stauffer left Westmoreland was the 1989 Stock Purchase Agreement ("1989 SPA"- Pl.Ex.2).

2. The 1989 SPA stated that stock was to be valued at its "Agreed Value." Pl. Ex. 2, Article VII, Section 7.3, at page 9.

3. Once the "Agreed Value" was initially established pursuant to Section 7.4 (Pl.Ex.2, Article VII, Section 7.3, at page 9) the "Agreed Value" could never be redetermined without the written consent of all parties, "upon their filing with the Secretary of the Corporation a Certificate of Agreed Value....dated and signed by each of the parties." Pl.Ex. 2 Article VII, 7.3, at page 9.

4. Absent the written consent of all parties, there is no "buy-out" formula calculation to be computed each time the stock is purchased and/or sold contained within the 1989 SPA. Pl.Ex. 2 Article VII, 7.3, at page 9.

5. "The Certificate of Agreed Value last filed with the Secretary of the Corporation.....shall be conclusive as to the purchase price and shall be accepted by and binding upon all parties hereto." Pl.Ex. 2 Article VII, 7.3, at pages 9, 10.

6. The stock's "Agreed Value" at the time of Christine Stauffer's stock purchase was $258,327 (as determined by Westmoreland's agent accountant Leaf) which Stauffer did, in fact, pay for the stock. Pl.Ex.12.

7. Christine Stauffer never, subsequent to her stock purchase from Westmoreland in the amount of $258,327, agreed to, nor signed, any redetermination of the stock's "Agreed Value" (ie: a new dated and signed "Certificate of Agreed Value") as required by SPA (Pl.Ex. 2, Article VII, 7.3, at page 9).

8. Christine Stauffer's stock was transferred to and by the Corporation on April 14, 1999. Pl.Ex. 16.

9. Stauffer is owed $258,327 as of April 14, 1999, plus prejudgment interest.

10. Stauffer is relying on the controlling 1989 Stock Purchase Agreement terms.

11. Former shareholders' Struwe's and Hartman's stock buy-out by the Corporation was pursuant to a book value calculation because both agreed to such a new arrangement by way of signing new written agreements (Pl.Ex. 18 and 19) which specifically superceded the prior 1989 SPA (Pl.Ex.2) and all other prior agreements they had entered into with Westmoreland.

12. In effect at the time Christine Stauffer became an employee/shareholder of the corporation was the 1989 Unfunded Deferred Compensation Agreement ("1989 UDCA"). Pl.Ex. 5.

13. This agreement was entered into between Westmoreland and each of their physician- employees. Pl.Ex.5, page 1 ("and _____ M.D.(the "Employee")" and page 4 ("years as corporate physician- employee.")

14. In said agreement there was a distinction between "physician-employee" and

"shareholder-employee."

15. The 1989 UDCA applied specifically to and made reference to ("and _____ M.D.(the "Employee")") and page 4 ("years as corporate physician-employee."); Pl.Ex.5, page 1 ("and _____ M.D. (the "Employee"); and page 4 (ie:years as "corporate physician-employee").

16. The 1989 UDCA (Pl.Ex.5) applied to Stauffer (and any other physician employee) as soon as she became a physician-employee with Westmoreland, not later when she exercised her option to purchase stock in the corporation and became a shareholder. Pl.Ex.1, page 5, par.13.

17. The 1989 UDCA applied to and became a binding contract between Stauffer and Westmoreland as of the time Stauffer became a physician-employee (ie: March 3, 1990) not when she became a shareholder-employee (ie: 8/1/93 or 5/1/96 depending on what intrepretation one believes).

18. Pursuant to the 1989 UDCA, it could only be, "... amended in whole or in part upon the written consent of the parties hereto and their respective successors in interest, if any." Pl.Ex. 5, no. 8, at page 6.

19. At no time, did Stauffer consent, in writing or otherwise, to amend the 1989 UDCA.

20. Both 3.1 (a) "Initial Amount" and 3.1 (b) "Supplemental Amount" were part of this specific contract between Stauffer and Westmoreland as of the time she first became a physician-employee of Westmoreland.

21.  Stauffer's employment termination was on February 28, 1999.

22.  Pursuant to the 1989 UDCA, a shareholder's date of termination was the defining day of the "Account" valuation. Pl.Ex. 5, at pg 2, 3.1 (a) (1) and (2).

23.  As of February 28, 1999, pursuant to the corporation's own accountant/agent, Leaf, the accounts receivables equaled $817,272.  Pl.Ex.13, line 2.

24.  Pursuant to the 1989 UDCA (Pl.Ex.5,pg 2), 3.1 (a) (1) and (2) Account - "Determination of Amount" computations, Stauffer's "Account" should have been credited $184,092 computed as follows (it is critical to note "gross" not "net" accounts receivables are utilized in the 1989 UDCA):

25. -3.1 (a)(1). If $161,813 of the $817,272 (Pl.Ex.13) are > 6 mo. old (Pl.Ex.6, line 2), then $655,459are < 6 mo. old.  $655,459 divided by 4 shareholders = $163,865 owing Stauffer.

26. -3.1 (a)(2).  $161,813 (A/R > 6 mo.) divided by 50% = $80,907 divided by 4 shareholders = $20,227 owing Stauffer.

27.  Pursuant to the 1989 UDCA, 3.1 (a) (1) and (2) Account amount computations, $163,865 + $20,227 = $184,092, plus prejudgment interest as of 2/28/99, is owing Stauffer.

27.a.  Stauffer was an equal shareholder as of 5/1/96 (Pl.Ex.9); thus, Stauffer is owed this $184,092 plus prejudgment interest as of 2/28/99, even assuming, arguendo, that Stauffer was not a shareholder until 8/1/93.

28. Pursuant to the 1989 UDCA, 3.1 (b) Account computation, "Supplemental Amount," which was in effect at the time of her departure on February 28, 1999 (Pl.Ex. 5, at page 2) Stauffer is owed $395,946, computed as follows:

-30% of Average Gross Fee Income (computed as a 3 year average) per the corporation tax returns: 1996=$3,278,408 +  1997=$3,452,823 + 1998=$3,167,409 = $9,898,640 divided by 3 = $3,299,547 multiplied by 30%= $989,864

$989,864 x 40% (for 9 yrs as employee-Pl.Ex.5, pg 4)= $395,946 owing Stauffer.

29. Gardner, Falls, Logan, Hartman, switched the 1989 UDCA (Pl.Ex.5) agreement term from "employee-physician" to "shareholder-employee" without Stauffer's written consent nor knowledge by way of their "Action by Unanimous Written Consent of the Board of Directors of Westmoreland...." (Pl.Ex. 22) and their "Amendment" (Pl.Ex.23).

30. Gardner, Falls, Logan, Hartman neither as Board of Directors (or as parties to the agreement) lacked authority to change/amend any agreement unilaterally without the consent of all the parties to the agreement.

31. On 8/1/93, Stauffer became an equal shareholder of Westmoreland on the day (8/1/93-Pl.Ex.12) she exercised her option to purchase her stock shares pursuant to the terms of her Employment Agreement (Pl.Ex.1, pg 5, par. 13), which stated, "13. Benefits accruing to Employee Upon Becoming a Shareholder. After Employee has exercised his option to purchase the interest described in Paragraph 12 above, the Employee's salary shall be equal to that of the other equal shareholders."

32. Stauffer was a shareholder-employee as of 8/1/93 pursuant to the Employment Agreement terms agreed to by all the parties on 3/3/90. Pl.Ex.1,pg5,par.13.

33. Stauffer was a party to the 1989 UDCA as a shareholder-employee as of 8/1/93 (the day she exercised her option to purchase her stock shares).

34. The Amendment to the 1989 UDCA (Pl.Ex. 25 and 24) executed on 11/4/93 was without the written consent of all the parties (ie: Stauffer) to the 1989 UDCA. (Pl.Ex.5, par.8).

35. Defendants had Stauffer sign a 1996 document called "Amendment to Stock Purchase Agreement" (Pl.Ex.9).

36. Pursuant to the terms of her Employment Agreement (Pl.Ex. 1, pg 4-5, Par 12 and 13), Stauffer was an equal shareholder and "bound" by the terms of the 1989 SPA as of 8/1/93 (the day she exercised her option to purchase her shares-Pl.Ex.12).

37. Stauffer was an "equal" shareholder as of the day she exercised her option to purchase her stock shares on 8/1/93.

39. Stauffer was a party to the 1989 SPA as of 8/1/93.

40. The 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) reaffirmed the previous "Employment Agreement" dated 3/3/90 entered into by the parties.

41. Stauffer's $386,346 salary inequality difference amount was derived directly from the corporation's very own submitted tax returns for 1993-8, prepared by Westmoreland accountant, Leaf. Pl.Ex.14.

42. The controlling document on the salary equality issue was the 1990 Employment Agreement (Pl.Ex.1, par.13, at page 5).

43. Stauffer exercised her option on August 1, 1993, according to Westmoreland's agent, accountant Leaf. Pl.Ex. 12.

44. As of August 1, 1993, through February 28, 1999, Stauffer's salary should have been equal to the other 3 shareholders pursuant to the 1990 Employment Agreement entered into between Westmoreland and Stauffer. Pl.Ex. 1, at page 5, par. 13, lines 1-3.

45. Pursuant to the corporation's federal tax returns (Pl.Ex.14) for the years 1993, 4,5,6,7, and 8, Stauffer's salary inequality was $386,346.

46. The $386,346 salary disparity was computed as follows:

1993 -$372,875 divided by 12=$31,073 per month given to shareholder Gardner. Stauffer became a shareholder on or about August 1, 1993; thus, she was a shareholder for 5 months during this year. Stauffer received $25,000 per month; therefore, the compensation inequality for 1993 was $30,365.

| 1993- | | $30,365 |
|---|---|---|
| 1994 - | $289,545 - $263,600 = | $ 25,945 |
| 1995 - | $341,700 - $180,745 = | $160,955 |
| 1996 - | $319,829 - $257,846 = | $ 61,983 |
| 1997 - | $302,359 - $270,346 = | $32,013 |

1998 -    $285,085 - $280,000 =  <u>$5,085</u>

          TOTAL FOR 1993-8  <u>$386,346  Salary Inequality</u>

1999-    plus(?) - no information regarding this year has yet been provided Stauffer.

      47.  Stauffer is owed <u>$386,346,</u> plus the 1999 salary inequality.

      48.  Pursuant to Stauffer's Employment Agreement (Pl.Ex.1) at par. 10, pages 2-3, the Employment Agreement could be terminated by either the Employer or Employee upon giving 2 weeks written notice to the other party.

      49.  Stauffer originally gave her 2 week written notice to terminate her employment with Westmoreland on November 11,1998. Pl.Ex.17.

      50.  Subsequently, Stauffer withdrew her resignation letter and did not stop working.

      51.  Stauffer continued to work until 2/28/99.

      53.  In her Employment Agreement, it stated that if the Employer gave the Employee notice she is being terminated, the Employee shall be entitled to one month's additional salary upon termination. (handwritten in by Westmoreland agent). Pl.Ex.1,pg 4,par.10.

      54.  The "Letter of Resignation" that the Defendants requested that Stauffer sign (Pl.Ex.3, at last page) used the present tense "I, Christine Skorberg, M.D., hereby resign as an officer and shareholder of Westmoreland Obstetric and Gynecologic Associates, S.C. as of February 28, 1999.

55. Stauffer repeatedly told the other physicians that she wanted to stay until she sold her house, and further, she wanted to come into work on 3/1/99.

56. Stauffer is entitled to the one month's additional salary ($23,333) based upon her termination on 2/28/99 by Westmoreland pursuant to her Employment Agreement terms, Pl.Ex.1, par.10, pages 2-3.

57. Gardner, Falls, and Logan in their official corporate capacities (ie: Board of Directors/Officers) intentionally and knowingly violated, changed, modified, deleted, and/or replaced two major corporation agreement, specifically, the 1989 SPA-Pl.Ex.2 and 1989 UDCA-Pl.Ex. 5 without the written consent, nor even knowledge of, all the parties to each agreement (ie: Christine Stauffer).

58. Christine Stauffer was a party to both of the aforementioned two agreements and was never even informed of, nor agreed to any agreement change.

59. Gardner, Falls, and Logan, while acting in their official corporate capacities (ie: Board of Directors/Officers), and without Stauffer's consent nor even knowledge, knowingly and intentionally replaced the controlling 1989 Stock Purchase Agreement (1989 SPA-Pl.Ex.2) and the terms contained therein with the 1997 Stock Redemption Agreement (1997 SRA-Pl.Ex.7).

60. Under the terms of the 1989 SPA, Stauffer's stock was valued at $258,327 ("Agreed Value") by Westmoreland's agent and accountant Robert Leaf. Pl.Ex.12.

61. Under the terms of the 1997 SRA, Stauffer's stock was valued at $29,753 (Pl.Ex.6,pg2), a decrease in the stock's value by $228,574.

62. The major differences between 1989 SPA (Pl.Ex.2) and 1997 SRA (Pl.Ex.7), which resulted in the disparity in Stauffer's stock value were; 1) in the 1989 SPA, Accounts Receiveables (A/R) were included as assets, in 1997 A/R were valued at 0, and thus, omitted (Pl.Ex.7, pg8,7.3,lines17-19), and, 2) in 1989 SPA, Generally Accepted Accounting Procedures (GAAP) were employed (Pl.Ex.2,pg10,7.4,lines 13-14), in 1997 SRA, tax accounting principles normally used by the Corporation consistently applied were employed (Pl.Ex.7, pg8,7.3).

63. Gardner, Falls, and Logan, while acting in their official corporate capacities, knowingly and intentionally, and without Stauffer's consent, replaced the controlling 1989 Unfunded Deferred Compensation Agreement (1989 UDCA-Pl.Ex.5) with the 1997 Deferred Compensation Agreement (1997 DCA-Pl.Ex.8).

64. Under the terms of the 1989 DCA, Stauffer accounts receivables account's value and owing to her was $580,038.

65. Under the terms of the 1997 DCA, Stauffer's accounts receivables account's value and owing her was $128,864 (Pl.Ex.6, pg1), a decrease in the accounts receivables' value by $469,725 (ie: $580,038-$128,864=$451,174).

66. The disparity in Stauffer's deferred compensation valuation was due to; 1) a different valuation paradigm was employed by the two documents, 2) in 1989 UDCA, gross accounts receivables were employed, in 1997 DCA, net accounts receivables were employed, and, lastly, 3) in the 1997 DCA, the improper deletion of 1989 DCA, 3.1 (b) provision resulted in a loss to Stauffer of $395,946.

67. Gardner, Falls, Logan, Hartman, without Stauffer's consent, switched the 1989 UDCA (Pl.Ex.5) agreement term from "physician-physician" to "shareholder-employee" by way of their "Action by Unanimous Written Consent of the Board of Directors of Westmoreland...." (Pl.Ex.25) and their "Amendment" (Pl.Ex.24) which ultimately resulted in a $395,946 loss to Stauffer.

68. Gardner, Falls, Logan, Hartman had no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement.

69. As of 8/1/93, Stauffer became an equal shareholder of Westmoreland the very day (8/1/93-Pl.Ex.12) she exercised her option to purchase her stock shares pursuant to the terms of her Employment Agreement (Pl.Ex.1, pg 5, par. 13), which stated, "13. Benefits accruing to Employee Upon Becoming a Shareholder. After Employee has exercised his option to purchase the interest described in Paragraph 12 above, the Employee's salary shall be equal to that of the other equal shareholders."

70. Stauffer was a shareholder-employee as of 8/1/93 pursuant to her Employment Agreement terms. Pl.Ex.1,pg5,par.13.

71. Stauffer was a party to the 1989 UDCA as a shareholder-employee as of 8/1/93 (the day she exercised her option to purchase her stock shares).

72. The Amendment to the 1989 UDCA (Pl.Ex. 25, 24) was subsequently executed on 11/4/93 without the written consent of all the parties (ie: Stauffer) to the 1989 UDCA was improper, void, and without effect at least as to Stauffer. (Pl.Ex.5,

13

par.8).

73. The Defendants had Stauffer sign a 1996 document called "Amendment to Stock Purchase Agreement" (Pl.Ex.9).

74. Pursuant to the terms of her Employment Agreement (Pl.Ex. 1, pg 4-5, Par 12 and 13), Stauffer was an equal shareholder and "bound" by the terms of the 1989 SPA as of 8/1/93.

75. Stauffer was an "equal" shareholder as of the day she exercised her option to purchase her stock shares on 8/1/93.

76. The Defendants lacked the authority to transfer stock shares to Stauffer on 5/1/96 that Stauffer owned as of 8/1/93.

77. Stauffer was a party to the 1989 SPA as of 8/1/93.

78. The 1996 Amendment to Stock Purchase Agreement (Pl.Ex.9) was void.

79. Gardner, Falls, Logan, Hartman as Board of Directors (and as parties to the agreement) had no authority to change/amend any agreement unilaterally without the consent of all the parties (ie; Stauffer) to the agreement.

80. Defendants' agent and accountant, Leaf, admits Stauffer is owed $29,753 for her stock as of 2/28/99.

81. Defendants' agent and accountant, Leaf, admits Stauffer is owed $128,864 for her stock as of 2/28/99.

14

82. To date, Defendants have made one deferred compensation payment of $10,739 to Stauffer.

83. To date, Defendants have made no payments to Stauffer for her stock shares transferred.

84. Leaf made no calculations to arrive at the $258,327 "agreed value" for 250 Stauffer's stock shares.

85. Logan's "agreed value" for his 250 stock shares was within a $100 of the price of Stauffer's "agreed value."

86. When the "agreed value" was calculated to arrive at the $258,327, accounts receivables were included in the calculation but the corresponding deferred compensation owed to the then existing shareholders was excluded from the liabilities section of the Balance Sheet.

87. Defendants through their agents for Westmoreland told Stauffer that she had signed the 1997 Deferred Compensation Agreement.

88. Defendants through their agents for the Westmoreland told Stauffer that she had signed the 1997 Stock Purchase Agreement.

89. The handwritten addition to the Employment Agreement, pg 4, paragraph 10, "Add'l salary upon Termination" was added into the contract by the parties prior to their signatures and was meant to be part of said contract.

**Declaration:**  I hereby declare under the penalty of perjury under the laws of the United States that upon personal knowledge the foregoing is true and correct.

_____

John D. Stauffer, Jr.

Respectfully submitted by:

Plaintiff

_____

John D. Stauffer, Jr.

Plaintiff's Address:

John D. Stauffer Jr.

1425 E. Stuart St.

Ft. Collins, CO 80525

(H) 970.493.3722

(F) 970.407.1100

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was mailed via Federal Express on July 18, 2002 and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

_____

John D. Stauffer, Jr.

16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John D. Stauffer, Jr.,<br>Christine Stauffer,<br>     Plaintiffs, | Docket Number: **00 C 1242**<br><br>Assigned Judge: **James B. Moran** |
| vs. | |
| Westmoreland Obstetric and<br>Gynecologic Associates, S.C.,<br>Hugh Falls, William Gardner,<br>Scott Logan, | |
| Defendants. | |

**FILED**
JUL 1 9 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**
JUL 2 2 2002

## CHRISTINE STAUFFER'S FRCP 56 (e) / L.R.56.1(1)  AFFIDAVIT

Affiant, Christine Stauffer submits this FRCP 56 (e) / L.R.56.1(1) affidavit in the above-captioned case and swears upon her oath to the following:

1. I personally received those documents as contained in Plaintiff's Document Exhibit List, specifically numbers 1,2,3,5,6,7,8,9,12,13,14,16,18,19,20,21,22,and 23 from Westmoreland.

2. I personally received Plaintiff's Document Exhibit List, specifically number 10. from Westmoreland attorney Grasso.

3. I personally received Plaintiff's Document Exhibit List, specifically numbers11 and 15, from my former attorney McErlean.

4. I personally authored and sent/gave to Westmoreland Plaintiff's Document Exhibit List, specifically number 4 and 17.

94

**Declaration:** I hereby declare under the penalty of perjury under the laws of the United States that upon personal knowledge the foregoing is true and correct upon information and belief.

_____
Christine Stauffer


Respectfully submitted by:
Plaintiff

_____
John D. Stauffer, Jr.


Plaintiff's Address:
John D. Stauffer Jr.
1425 E. Stuart St.
Ft. Collins, CO 80525
(H) 970.493.3722
(F) 970.407.1100


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was mailed via Federal Express on July 18, 2002 and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

_____
John D. Stauffer, Jr.

## PLAINTIFF DOCUMENT EXHIBIT LIST

1. **Employment Agreement** (dated 3/3/90 between Christine Skorberg now known as Christine Stauffer and Westmoreland).

2. **Stock Purchase Agreement** ("1989 SPA") dated 1989 (also referred to as the "Buy Sell Agreement" in Stauffer's Employment Agreement). Pl.Ex.1, pg 4, par.12.

3. **Resignation Letter Acceptance Letter"** dated 2/1/99 from Westmoreland to Christine Stauffer, which Doctors Garder, Falls, and Logan

4. **Christine Skorberg, M.D., Stock Transfer Letter to Westmoreland** dated 4/14/99

5. **Unfunded Deferred Compensation Agreement** dated 1989 between the corporation and all "corporate physician-employees."

6. **Westmoreland Accountant Leaf's $158,617 computation of deferred compensation due Skorberg (Stauffer) as of 2/28/99" dated 3/16/99 and computation of Stauffer's 250 shares book value of $29,753 dated 3/17/99**

7. **Stock Redemption Agreement** dated 1997, which was unsigned and unagreed to by Stauffer

8. **Deferred Compensation Agreement** dated 1997, which was unsigned and unagreed to by Stauffer.

9. **Amendment to Stock Purchase Agreement** dated 5/1/96 between Westmoreland and its shareholders

10. **Westmoreland Grasso letter to Christine Skorberg** dated 4/19/99 and sent to Stauffer at about that time period stating that corporation was ceasing all payments to her. Also included herein is **Assignment Separate from Certificate from Westmoreland attorney Grasso** regarding Stauffer's stock shares and assignment of interest separate of those shares.

11. **Chuhak & Tecson, Grasso Letters to McErlean** dated 1/12/00 and 2/1/00

12. **Dr. Christine F. Skorberg Buy In Schedule of Stock Agreed Value $258,327** dated 8/7/93 stating that the agreed value of her 250 stock shares as of 8/1/93 was $258,327.

13. **Westmoreland Balance Sheet at 2/28/99** dated 3/19/02

14. **Partial tax returns (1993-1998) stating Officers' salaries of Westmoreland / schedule E of said tax returns/Skorberg 1996 Salary Schedule**

15. **McErlean letters/request for Westmoreland Corporate Documents dated 12/21/99 and 2/2/00 to Westmoreland attorney Grasso.**

16. **Stock Redemption Agreement** dated 4/14/99 between Gardner, Falls, Logan, and Westmoreland.

17. **Christine Stauffer Letter of Resignation to Westmoreland** dated 11/12/98.

18. **Dr. Struwe superceding Agreement with Westmoreland** dated 10/29/1993 wherein Struwe voluntarily agreed to new terms with Westmoreland that superceded all prior agreements and terms he had made with Westmoreland.

19. **Dr. Hartman superceding Agreement with Westmoreland** dated 6/15/95 wherein Hartman voluntarily agreed to new terms with Westmoreland that superceded all prior agreements and terms he had made with Westmoreland.

20. **Westmoreland Hypothetical Valuation of Christine Stauffer's Deferred Compensation Owed her as of 6/30/97** dated 10/6/97

21. **Westmoreland Hypothetical Valuation of Christine Stauffer's Stock Redemption Price Owed her as of 6/30/97** dated 10/6/97

22. **Action by Unanimous Written Consent of the Board of Directors of Westmoreland Obstetric and Gynecologic Associates, S.C.** dated 11/4/93

23. **Amendment** dated 11/4/93



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

John D. Stauffer,Jr.        }    Docket Number: **00 C 1242**
                            }
    Plaintiff,              }    Assigned Judge: **James B. Moran**
                            }
vs.                         }
                            }
Westmoreland Obstetric and  }    **FILED**          **DOCKETED**
Gynecologic Associates, S.C.,}                        JUL 2 2 2002
Hugh Falls, William Gardner,}    JUL 1 0 2002
Scott Logan,                }
                            )
    Defendants.             }    MICHAEL W. DOBBINS
                                 CLERK, U.S. DISTRICT COURT

### JOHN STAUFFER'S FRCP 56 (e)/L.R.56.1(1) AFFIDAVIT

Plaintiff and affiant, John D. Stauffer, Jr. ("Stauffer"), submits this FRCP 56 (e) /

L.R.56.1(1) affidavit in conjunction with his accompanying "Motion for Partial Summary

Judgment Against Defendants" and swears upon his oath to the following:

1. I personally received those documents as contained in Plaintiff's Document

Exhibit List, specifically numbers 1,2,3,5,6,7,8,9,12,13,14,16,18,19,20,21,22,and 23 from

Westmoreland.

2. I personally received Plaintiff's Document Exhibit List, specifically numbers11

and 15, from attorney McErlean.

4. I personally received from Christine F. Stauffer Plaintiff's Document Exhibit

List, specifically number 4 and 17.

*94*

**Declaration:** I hereby declare under the penalty of perjury under the laws of the United States that upon personal knowledge the foregoing is true and correct upon information and belief.

John D. Stauffer Jr.

Respectfully submitted by:
Plaintiff

John D. Stauffer, Jr.

Plaintiff's Address:
John D. Stauffer Jr.
1425 E. Stuart St.
Ft. Collins, CO 80525
(H) 970.493.3722
(F) 970.407.1100

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was mailed via Federal Express, on July 18, 2002, and addressed to: Jeralyn H. Baran, CHUHAK & TECSON, P.C., 30 S. Wacker Dr., Suite 2600, Chicago, IL, 60606.

John D. Stauffer, Jr.

## PLAINTIFF DOCUMENT EXHIBIT LIST

1. **Employment Agreement** (dated 3/3/90 between Christine Skorberg now known as Christine Stauffer and Westmoreland).

2. **Stock Purchase Agreement** ("1989 SPA") dated 1989 (also referred to as the "Buy Sell Agreement" in Stauffer's Employment Agreement). Pl.Ex.1, pg 4, par.12.

3. **Resignation Letter Acceptance Letter"** dated 2/1/99 from Westmoreland to Christine Stauffer, which Doctors Garder, Falls, and Logan

4. **Christine Skorberg, M.D., Stock Transfer Letter to Westmoreland** dated 4/14/99

5. **Unfunded Deferred Compensation Agreement** dated 1989 between the corporation and all "corporate physician-employees."

6. **Westmoreland Accountant Leaf's $158,617 computation of deferred compensation due Skorberg (Stauffer) as of 2/28/99" dated 3/16/99 and computation of Stauffer's 250 shares book value of $29,753 dated 3/17/99**

7. **Stock Redemption Agreement** dated 1997, which was unsigned and unagreed to by Stauffer

8. **Deferred Compensation Agreement** dated 1997, which was unsigned and unagreed to by Stauffer.

9. **Amendment to Stock Purchase Agreement** dated 5/1/96 between Westmoreland and its shareholders

10. **Westmoreland Grasso letter to Christine Skorberg** dated 4/19/99 and sent to Stauffer at about that time period stating that corporation was ceasing all payments to her. Also included herein is **Assignment Separate from Certificate from Westmoreland attorney Grasso** regarding Stauffer's stock shares and assignment of interest separate of those shares.

11. **Chuhak & Tecson, Grasso Letters to McErlean** dated 1/12/00 and 2/1/00

12. **Dr. Christine F. Skorberg Buy In Schedule of Stock Agreed Value $258,327** dated 8/7/93 stating that the agreed value of her 250 stock shares as of 8/1/93 was $258,327.

13. **Westmoreland Balance Sheet at 2/28/99** dated 3/19/02

14. **Partial tax returns (1993-1998) stating Officers' salaries of Westmoreland / schedule E of said tax returns/Skorberg 1996 Salary Schedule**

15. <u>McErlean letters/request for Westmoreland Corporate Documents dated 12/21/99 and 2/2/00 to Westmoreland attorney Grasso.</u>

16. <u>Stock Redemption Agreement</u> dated 4/14/99 between Gardner, Falls, Logan, and Westmoreland.

17. <u>Christine Stauffer Letter of Resignation to Westmoreland</u> dated 11/12/98.

18. <u>Dr. Struwe superceding Agreement with Westmoreland</u> dated 10/29/1993 wherein Struwe voluntarily agreed to new terms with Westmoreland that superceded all prior agreements and terms he had made with Westmoreland.

19. <u>Dr. Hartman superceding Agreement with Westmoreland</u> dated 6/15/95 wherein Hartman voluntarily agreed to new terms with Westmoreland that superceded all prior agreements and terms he had made with Westmoreland.

20. <u>Westmoreland Hypothetical Valuation of Christine Stauffer's Deferred Compensation Owed her as of 6/30/97</u> dated 10/6/97

21. <u>Westmoreland Hypothetical Valuation of Christine Stauffer's Stock Redemption Price Owed her as of 6/30/97</u> dated 10/6/97

22. <u>Action by Unanimous Written Consent of the Board of Directors of Westmoreland Obstetric and Gynecologic Associates, S.C.</u> dated 11/4/93

23. <u>Amendment</u> dated 11/4/93